## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## (EASTERN DIVISION)

| | |
|---|---|
| JONAS CAMPBELL,<br><br>               Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS,<br>INC. AND TRANS UNION LLC,<br><br>               Defendants. | **Case No.:** 1:21-cv-2325<br><br><br>**VERIFIED COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br><br>   1.  **FCRA, 15 USC § 1681 *et seq.*** |

NOW COMES, Plaintiff Jonas Campbell ("Plaintiff" or "Campbell") by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union") (referenced collectively as "Defendants").

## <u>INTRODUCTION</u>

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants. Plaintiff contends the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.

//

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, and are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

4.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of Richton Park in Cook County, Illinois.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.      Defendant Experian is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.      Defendant Trans Union is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Trans Union's

2

principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through their registered agent, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

9.      During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

10.     Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

11.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## RELEVANT FACTUAL BACKGROUND

13.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14.     Defendants Experian and Trans Union as well as non-party, Equifax Information Services, LLC ("Equifax"), the three major credit reporting agencies ("CRAs") in the United

States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

15. Defendants' credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16. Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants, and other information must be independently gathered by Defendants, or acquired from third party providers/vendors or repositories, including computerized reporting services like PACER.

17. The information Defendants include in a credit report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

18. The majority of institutions that offer financial services (e.g., banks, creditors, lender) rely upon credit reports from CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), to interpret the information in a consumer's credit report.

4

19.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's credit report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

20.     FICO Scores factor the following credit report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

     a.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

     b.     Consumer credit, including consumer FICO scores, are heavily impacted by the accounts reported in Defendants' consumer credit reports, and for consumers exiting bankruptcy, retaining and re-establishing credit accounts in good standing.

21.     Defendants regularly obtain and report consumer bankruptcy information in these consumer credit reports. Defendants are well aware of the impact of new credit and payment history for consumers beginning to re-establish credit following bankruptcy, and that accurately reporting pre and post bankruptcy accounts is vital to consumer creditworthiness, including consumer FICO scores.

22.     Nevertheless, Defendants regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

23. Rather than follow reasonable procedures to assure maximum possible accuracy, as they are required by the FCRA, Defendants frequently report consumer information regarding pre and post bankruptcy accounts/debts based on incomplete or knowingly inaccurate information.

24. Defendants regularly publish consumer information that conflicts with information provided by data furnishers, information included in Defendants' credit files, and information contained in public records that Defendants regularly access, and/or sourced through Defendants' independent and voluntary efforts.

25. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate credit reporting following during and following bankruptcy.

26. Therefore, Defendants are on continued notice of their inadequate reporting procedures for consumers who file bankruptcy, which routinely produce inaccurate balances, account statuses, and account payment statuses.

27. Plaintiff filed for a "no asset" Chapter 7 Bankruptcy on or about July 2020 in the United States Bankruptcy Court for the Northern District of Illinois, case no. 20-13921.

28. Plaintiff received an Order of Discharge on or about October 14, 2020.

29. Upon information and belief, Defendants prepared one or more credit reports concerning Plaintiff after he was discharged from Chapter 7 Bankruptcy.

30. In Plaintiff's credit reports, Defendants included his bankruptcy case number, court, filing date, the fact that Plaintiff's bankruptcy had been discharged, and the date of discharge.

31. Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint

6

accounts), the date the accounts were opened, the status of these accounts, and the dates of the last status update.

32. Defendants reported Plaintiff's consumer bankruptcy information in the Public Records section and in the individual tradelines of his consumer credit reports.

33. Defendants received notice of Plaintiff's bankruptcy discharge through their independent collection of consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines featured on his credit reports.

34. Defendants are aware that accounts opened after the date of a bankruptcy discharge are not included in the bankruptcy, especially where Defendant is on notice of the account opening date and/or continued payments on the account.

35. Defendants should have accurately reported all of Plaintiff's accounts opened after the bankruptcy discharge as open accounts, but did not do so.

36. In December 2020, after his bankruptcy discharge, Plaintiff opened an account with Atlantic Capital Bank, account number ending in 0553, (the "Account") in an effort to start fresh after his bankruptcy discharge and improve his credit.

37. Rather than accurately report Plaintiff's consumer information, Defendants inaccurately reported Plaintiff's Account even though Defendants knew and reported that the Account did not arise until well after Plaintiff's bankruptcy discharge.

38. The Account was opened after Plaintiff's bankruptcy discharge and should have been reported as open, along with the reported payments being made on the Account. Instead, Defendants inaccurately reported that this Account was included in and discharged in bankruptcy, which has the effect of adding to the number of accounts discharged in bankruptcy, and subtracting from the accounts that are open and being repaid. This is dually harmful.

39.     Experian inaccurately reported the Account as included in the Chapter 7 Bankruptcy.

40.     Experian did not indicate that the Account was an open account that was opened after the bankruptcy discharge or that payments were being made on the Account.

41.     Trans Union also inaccurately reported the Account as included in the Chapter 7 Bankruptcy.

42.     Trans Union did not indicate that the Account was an open account that was opened after the bankruptcy discharge or that payments were being made on the Account.

43.     Experian and Trans Union knew this reporting was inaccurate, since each reported that Plaintiff obtained his bankruptcy discharge in October 2020 and that the Account was opened in December 2020— months after his Bankruptcy discharge.

44.     Upon information and belief, Atlantic Capital Bank furnished information to Defendants that indicated Plaintiff's debt was opened after the bankruptcy discharge and that it was not included or discharged in bankruptcy, but the Defendants rejected or otherwise overrode the data they received.

45.     Upon information and belief, Defendants additionally and/or alternatively knew from past experiences that Atlantic Capital Bank furnished inaccurate information regarding discharged debts or, in the alternative, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

46.     Alternatively, Defendants blindly relied on the information provided by Atlantic Capital Bank even though this information conflicted with information known by Defendants.

47.     Defendants' blind reliance on the furnisher, Atlantic Capital Bank, was unreasonable.

8

48.     Defendants' reliance on the furnisher, Atlantic Capital Bank is particularly egregious if Defendants knew from past experiences that Atlantic Capital Bank furnished inaccurate information regarding accounts or, in the alternative, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts.

49.     In any event, Defendants knew or had reason to know that they reported information contradicted by Defendants' own records and knowledge of Plaintiff's Chapter 7 bankruptcy discharge.

50.     Defendants inaccurately reported that Plaintiff's Account was included in bankruptcy, even though Defendants knew the Account was opened after the bankruptcy discharge and Plaintiff was making payments on the Account.

51.     Defendants' reporting of the Account is patently inaccurate.

52.     If not patently in accurate, Defendants' reporting of the Account is materially misleading.

53.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, credit denials, and other financial harm.  Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for and was denied a line of credit with Capital One, due to Defendants' inaccurate reporting which was published to Capital One in its review of Plaintiff's credit application.

54.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

//

## COUNT I
## Violations of the FCRA, 15 U.S.C. § 1681e(b)

55.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

56.     More than fifty years ago, the United States Congress determined that the banking system is dependent upon fair and accurate credit reporting.

57.     Congress recognized that inaccurate credit reports directly impair the efficiency of the banking system. Further, Congress noted that unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

58.     Congress knew that CRAs, like Defendants, play a vital role in assembling consumer information and evaluating consumer credit.

59.     Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.

60.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

61.     The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

62.     Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining consumers who file for bankruptcy.

63.     Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers who file bankruptcy, including

Plaintiff, who was discharged from Chapter 7 Bankruptcy, and opened a new account to reestablish and improve his credit.

64.     Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy, even where, as here, Defendants possess knowledge and information that the reported information is inaccurate, such as the date of a bankruptcy discharge and the date an account is opened.

65.     Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update post-bankruptcy debts as required by § 1681(e)(b).

66.     Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records and their own files.

67.     Defendants' failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because Defendants regularly and **voluntarily** obtain consumer bankruptcy information to include this information in credit files.

68.     Defendants knew or should have known they are obligated, by the FCRA, to maintain and employ reasonable procedures to assure they report maximally accurate consumer credit information.

69.     Defendants knew or should have known they are obligated, by the FCRA, to update consumer credit reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

70.     CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendants.

11

71.     Therefore, Defendants had ample notice of their obligations under the FCRA and their continued use of unreasonable procedures.

72.     If Defendants contend they did not have sufficient notice, Defendants must justify their own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

73.     Defendants regularly conduct **voluntary** public records searches with the intention of including bankruptcy information on the credit reports they sell to other parties for a profit.

74.     The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting regarding consumers who file for bankruptcy.

75.     In this case, Defendants sought out information about Plaintiff's bankruptcy and voluntarily reported this information in Plaintiff's credit reports.

76.     When Defendants located and published Plaintiff's bankruptcy information, they had an obligation to ensure they reported his discharge and its effect(s) with maximal accuracy.

77.     Unfortunately, Defendants willfully and consciously breached their duties as CRAs and deprived Plaintiff of his right to a fair and accurate credit report.

78.     Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

79.     Defendants possess information from which Defendants should know the reported information is inaccurate, as Plaintiff's credit report include: the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurately reported tradeline account/debt arose or was otherwise opened by the consumer.

80.     Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in his credit reports, including his bankruptcy case number, court, date of filing and date of discharge.

81.     Defendants are also on notice from other tradelines reported by Defendants that indicate when Plaintiff's accounts were discharged.

82.     Defendants received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

83.     Defendants know that accounts opened after a bankruptcy discharge date are not included or discharged in bankruptcy, and that these should not be inaccurately reported as having been included or discharged in bankruptcy.

84.     Yet, in this case, Defendants reported the Account, which was opened after Plaintiff's bankruptcy discharge date as included in the bankruptcy, even though Defendants knew and reported that the Account was opened not only after Plaintiff's bankruptcy filing, but also after Plaintiff's bankruptcy discharge.

85.     Defendants knew or should have known the information they reported about the Account was inaccurate.

86.     Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendants knew or should have known the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

87.     Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

88.     Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

89.     Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

90.     Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denials, and other financial harm caused by Defendants inaccurately reporting an account opened after Plaintiff's bankruptcy discharge date as included in the bankruptcy.

91.     Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

92.     Defendants are a direct and proximate cause of Plaintiff's damages.

93.     Defendant Experian is a substantial factor in Plaintiff's damages.

94.     Defendant Trans Union is a substantial factor in Plaintiff's damages.

95.     Therefore, Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)     Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

## **VERIFICATION OF PLAINTIFF**

I, Jonas Campbell, declare as follows:

1) I am a Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Illinois.

2) I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint and, if called on to testify, I would competently testify as to the matters stated herein.

3) Pursuant to 28 U.S. Code § 1746, I verify under penalty of perjury under the laws of the United States of America that the Factual allegations/statements in this Complaint concerning myself, my activities, and my intentions are true and correct, to the best of my knowledge and recollection.

Executed on __4/27/2021__

DocuSigned by:

*Jonas Campbell*

3117F5770EB541D...

Jonas Campbell

//

RESPECTFULLY SUBMITTED this 29th day of April 2021,

**PRICE LAW GROUP, APC**

By: */s/ Syed H. Hussain*
Syed H. Hussain (IL #6331378)
420 E Waterside Drive #3004
Chicago, IL 60601
T: (818) 600-5535
F: (818) 600-5435
E: syed@pricelawgroup.com
*Attorneys for Plaintiff Jonas Campbell*